David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiff
*LEANNE SANDRIANA*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| LEANNE SANDRIANA, | Civil Action No.: |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.** |
| BANK OF AMERICA, N.A.; NATIONSTAR MORTGAGE LLC; OCWEN LOAN SERVICING, LLC; U.S. BANK, N.A.; EQUIFAX INFORMATION SERVICES, LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

### INTRODUCTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit

Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

3. LEANNE SANDRIANA ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of BANK OF AMERICA, N.A. ("BOA"), NATIONSTAR MORTGAGE LLC ("NATIONSTAR"), OCWEN LOAN

SERVICING, LLC ("OCWEN"), U.S. BANK, N.A. ("US") and EQUIFAX INFORMATION SERVICES, LLC ("Equifax") (or jointly as "Defendants") with regard to erroneously reporting derogatory credit information to national reporting agencies.

4. Defendants failed to properly investigate Plaintiff's disputes, damaging Plaintiff's creditworthiness.

### JURISDICTION AND VENUE

5. This Court has federal question jurisdiction because this case arises out of violation of federal law. 15 U.S.C. §1681 *et seq.*; 28 U.S.C. §1331; *Smith v. Community Lending, Inc.*, 773 F.Supp.2d 941, 946 (D. Nev. 2011).

6. This action arises out of each Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681(x) ("FCRA").

7. Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Clark County, the State of Nevada and because Defendants are subject to personal jurisdiction in the County of Clark, State of Nevada as they conduct business there. Venue is also proper because, the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2). Further, Equifax has a registered agent of service in Nevada and is listed with the Nevada Secretary of State as a foreign limited liability company doing business in Nevada.

## PARTIES

8. Plaintiff is a natural person residing in the County of Clark, State of Nevada. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

9. Defendant BOA is a corporation doing business in the State of Nevada.

10. Defendant BOA is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

11. Defendant NATIONSTAR is a corporation doing business in the State of Nevada.

12. Defendant NATIONSTAR is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

13. Defendant OCWEN is a corporation doing business in the State of Nevada.

14. Defendant OCWEN is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

15. Defendant US is a corporation doing business in the State of Nevada.

16. Defendant US is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

17. Defendant Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports. Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), doing business with its principal place of business in Georgia.

18. Unless otherwise indicated, the use of Defendants' name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants' named.

### GENERAL ALLEGATIONS

19. On or about 3/01/2010, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Nevada pursuant to 11 U.S.C. §1301 *et seq*. Plaintiff's case was assigned Case Number 10-13273-btb (the "Chapter 13" or "Bankruptcy").

20. The obligations ("Debt") to each Defendant herein (as applicable) were scheduled in the Bankruptcy and each respective creditor-Defendant, or its predecessor in interest, received notice of the Bankruptcy.

21. Plaintiff made all payments required under the terms of the Confirmed Chapter 13 plan.

22. None of the Defendants named herein filed any proceedings to declare their alleged debts "non-dischargeable" pursuant to 11 U.S.C. § 523 *et seq.*

23. None of the Defendants named herein obtained relief from the "automatic stay" codified at 11 U.S.C. §362 *et seq.* while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff for any *personal* liability.

24. Accordingly, the debts to each Defendant named herein (as applicable) were discharged through the Bankruptcy on 8/07/2015.

25. Further, while the automatic stay was in effect during the Bankruptcy, it was illegal and inaccurate for any of the creditor-defendants to report any post-Bankruptcy derogatory collection information, which was inconsistent with the Orders entered by the Bankruptcy Court.

26. However, Defendants named herein, and each of them, either reported or caused to be reported inaccurate information after the Bankruptcy as discussed herein.

27. Defendant's reporting post-Bankruptcy derogatory information was inaccurate and misleading in that each Defendant continued reporting information based on Defendant's pre-bankruptcy contract terms with the

Plaintiff, which were no longer enforceable upon the bankruptcy filing, thereby rendering the disputed information "inaccurate".

28. The adverse information reported by Defendants was based on each Defendant's improper enforcement and reporting of pre-bankruptcy obligations, where such reporting failed to comply with the payment structure set forth in the Plaintiff's Chapter 13 Plan.  Failing to report consistent with the terms of the Chapter 13 plan was therefore inaccurate, since all the Plaintiff's pre-bankruptcy creditors (whether eventually discharged or not) were subject to repayment pursuant to the Chapter 13 plan terms while the Bankruptcy was pending.

29. Additionally, Defendant's inaccurate reporting did not comply with the Consumer Data Industry Association's Metro 2 reporting standards, which provides guidance for credit reporting and FCRA compliance.

30. The Consumer Data Industry Association ("CDIA") publishes the Metro 2 ("Metro 2") reporting standards to assist furnishers with their compliance requirements under the FCRA.

31. Courts rely on such guidance to determine furnisher liability.  *See e.g. In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit

reporting agency with the notation `Discharged in bankruptcy' and with a zero balance due").

32. On information and belief, Defendants herein adopted and at all times relevant implemented the Metro 2 format.

33. On information and belief, each furnisher-Defendant named herein adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of their respective duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

34. The Metro 2 format guidelines for credit reporting are nearly identical for reports made during the "Month BK Filed," "Months Between Petition Filed and BK Resolution," and after "Plan Completed" for Chapter 13 Debtors and furnishers who choose to report post-bankruptcy credit information to CRAs. *See e.g.*, 2015 CDIA Credit Reporting Resource Guide ("2015 Metro 2"), Frequently Asked Question 28(a), at pages 6-21 – 6-22.

35. Thus, many of the consumer reporting fields should be reported the same way both during and after a bankruptcy proceeding, *id*., with the following relevant exceptions:

   a.  <u>Current Balance</u>

     i. For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the outstanding balance amount. *Id*.

     ii. However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "Chapter 13 plan balance, which should decline as payments are made." *Id*. at 6-22.

     iii. And, for Current Balance reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report a current balance of "Zero." *Id*.

b. <u>Scheduled Monthly Payment Amount</u>:

     i. For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the "contractual monthly payment amount." *Id*. at 6-21.

     ii. However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "Chapter 13 Payment Amount." *Id*. at 6-22.

     iii. And, for Scheduled Monthly Payment Amount reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report a current balance of "Zero." *Id*.

36. Despite Metro 2 Format's instructions, each furnisher-Defendant named herein failed to conform to the Metro 2 Format when reporting on Plaintiff's accounts after the Plaintiff filed Bankruptcy as further set forth below.

37. To this end, the adverse reporting on the Plaintiff's report departed from the credit industry's own reporting standards and was not only inaccurate, but also materially misleading under the CDIA's standards as well.

38. A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about otherwise may be factually accurate data. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

## THE EQUIFAX VIOLATIONS

### BOA Misreported Credit Information

### RE: Account No. 1880

39. In an Equifax credit report dated October 8, 2015, BOA inaccurately reported that the Plaintiff was 120-149 days past due in April 2010. This was inaccurate, since the Plaintiff performed all obligations owed to BOA after filing Chapter 13 and obtained a discharge.  Moreover, BOA was paid according to the Chapter 13 Plan by the Chapter 13 Trustee and it was inaccurate for BOA to report that the Plaintiff was "past due" after the Chapter

13 filing, since the Plaintiff fully performed all obligations owed to BOA after filing the Chapter 13.

40. Further, BOA inaccurately reported that the Plaintiff's "Date Major Delinquency 1st Reported" (hereinafter "DLA") was December 2011, when the Plaintiff filed Bankruptcy on 3/01/2010. The DLA date should have been no later than the Bankruptcy filing date. By reporting a DLA later than the Bankruptcy filing date BOA caused the DLA to remain on the Plaintiff's credit reported longer than allowed under the FCRA's obsolescence period codified at 15 U.S.C. § 1681c(a). BOA's "re-aging" of its debt is illegally causing the trade line to remain on the Plaintiff's credit report longer than legally permissible.

41. On or about December 15, 2015, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed BOA's reported information regarding its reported obligation by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by BOA.

42. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed, corrected or deleted.

43. Upon receiving the Equifax Dispute Letter, Equifax timely notified BOA of the dispute based on its mandated statutory duty pursuant to 15 U.SC. § 1681i.

44. Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

45. On or about January 19, 2016, Plaintiff received notification from Equifax through its "reinvestigation" (Equifax Report No. 5362055131) that BOA and Equifax received notice of Plaintiff's dispute pursuant to 15 U.SC. § 1681i(a)(6), and verified the account as "Updated".

46. A reasonable investigation by these Defendants would have indicated that Plaintiff filed for Chapter 13 bankruptcy and made all required Chapter 13 plan payments, since Plaintiff obtained a discharge.

47.  BOA and Equifax failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681s-2(b)(1)(A) and § 1681i and wrongly verified inaccurate information in connection with Plaintiff's credit reports.

48. BOA and Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B) and § 1681i.

49. BOA and Equifax re-reported the inaccurate derogatory information on Plaintiff's report.  Specifically, BOA and Equifax still inaccurately reported that there was a "scheduled payment amount" of $1,931, even though Plaintiff was discharged on 8/07/2015 and no payments were due on this account

creating the misleading and false impression that a debt was still owed and due.

50. BOA and Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) and § 1681i.

51. Due to BOA's and Equifax's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E) and § 1681i, thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and § 1681i.

52. Plaintiff's continued efforts to correct BOA's and Equifax's erroneous and negative reporting of the discharged debt by communicating Plaintiff's dispute with BOA and Equifax were fruitless.

53. BOA's and Equifax's continued inaccurate and negative reporting of the discharged debt in light of its knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

54. Also as a result of BOA's and Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses in challenging the Defendants'

wrongful representations, damage to his creditworthiness, and emotional distress.

55. By inaccurately reporting account information relating to the discharged debt after notice and confirmation of its errors, BOA and Equifax failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E) and § 1681i.

## NATIONSTAR Misreported Credit Information

## RE: Account No. 1091

56. In an Equifax credit report dated October 8, 2015, NATIONSTAR inaccurately reported that the Plaintiff's "Date Major Delinquency 1st Reported" (hereinafter "DLA") was April 2015, when the Plaintiff filed Bankruptcy on 3/01/2010. The DLA date should have been no later than the Bankruptcy filing date. By reporting a DLA later than the Bankruptcy filing date NATIONSTAR caused the DLA to remain on the Plaintiff's credit reported longer than allowed under the FCRA's obsolescence period codified at 15 U.S.C. § 1681c(a). NATIONSTAR's "re-aging" of its debt is illegally causing the trade line to remain on the Plaintiff's credit report longer than legally permissible.

57. On or about December 15, 2015, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed NATIONSTAR's reported information regarding its reported

obligation by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by NATIONSTAR.

58. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed, corrected or deleted.

59. Upon receiving the Equifax Dispute Letter, Equifax timely notified NATIONSTAR of the dispute based on its mandated statutory duty pursuant to 15 U.SC. § 1681i.

60. Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

61. On or about January 19, 2016, Plaintiff received notification from Equifax through its "reinvestigation" (Equifax Report No. 5362055131) that NATIONSTAR and Equifax received notice of Plaintiff's dispute pursuant to 15 U.SC. § 1681i(a)(6), and verified the account as "Updated".

62. A reasonable investigation by these Defendants would have indicated that Plaintiff filed for Chapter 13 bankruptcy and made all required Chapter 13 plan payments, since Plaintiff obtained a discharge.

63. NATIONSTAR and Equifax failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681s-2(b)(1)(A) and § 1681i and wrongly verified inaccurate information in connection with Plaintiff's credit reports.

64. NATIONSTAR and Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B) and § 1681i.

65. NATIONSTAR and Equifax re-reported the inaccurate derogatory information on Plaintiff's report.  Specifically, NATIONSTAR and Equifax still inaccurately reported that the Plaintiff's DLA was April 2015, when the Plaintiff filed Bankruptcy on 3/01/2010. Also, NATIONSTAR and Equifax now inaccurately reported that the Plaintiff still owed an outstanding balance of $328,000 even though NATIONSTAR's debt was discharged in the Bankruptcy. It was therefore inaccurate for NATIONSTAR to report a balance any greater than $0. Further, NATIONSTAR and Equifax now inaccurately reported that the Plaintiff was "past due" in the amount of $143,740.  Since Plaintiff discharged NATIONSTAR's debt, there was a $0 balance due at the time NATIONSTAR reported the past due balance. Accordingly, reporting the past-due balance was inaccurate resulting from the Bankruptcy discharge. NATIONSTAR and Equifax also now inaccurately reported that there was a "scheduled payment amount" of $1,958, even though Plaintiff was discharged on 8/07/2015 and no payments were due on this account creating the misleading and false impression that a debt was still owed and due. Also, NATIONSTAR and Equifax now inaccurately reported that

the Plaintiff was 180 or more days past due from September 2015 through November 2015.  This was inaccurate, since the Plaintiff performed all obligations required under the Chapter 13 Plan and obtained a discharge. Moreover, NATIONSTAR was paid according to the Chapter 13 Plan by the Chapter 13 Trustee and it was inaccurate for NATIONSTAR to report that the Plaintiff was "past due" after the Chapter 13 filing, since the Plaintiff fully performed under the Chapter 13

66. NATIONSTAR and Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) and § 1681i.

67. Due to NATIONSTAR's and Equifax's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E) and § 1681i, thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and § 1681i.

68. Plaintiff's continued efforts to correct NATIONSTAR's and Equifax's erroneous and negative reporting of the discharged debt by communicating Plaintiff's dispute with NATIONSTAR and Equifax were fruitless.

69. NATIONSTAR's and Equifax's continued inaccurate and negative reporting of the discharged debt in light of its knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

70. Also as a result of NATIONSTAR's and Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses in challenging the Defendants' wrongful representations, damage to his creditworthiness, and emotional distress.

71. By inaccurately reporting account information relating to the discharged debt after notice and confirmation of its errors, NATIONSTAR and Equifax failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E) and § 1681i.

## OCWEN Misreported Credit Information

## RE: Account No. 9534

72. In an Equifax credit report dated October 8, 2015, OCWEN inaccurately reported that the Plaintiff still owed an outstanding balance of $228,346 even though OCWEN's debt was discharged in the Bankruptcy. It was therefore inaccurate for OCWEN to report a balance any greater than $0.

73. OCWEN also inaccurately reported that there was an "actual payment amount" of $1,354, even though Plaintiff was discharged on 8/07/2015 and

no payments were made or due on this account creating the misleading and false impression that a debt was still owed and due.

74. Also, OCWEN inaccurately reported that there was a "scheduled payment amount" of $1,354, even though Plaintiff was discharged on 8/07/2015 and no payments were due on this account creating the misleading and false impression that a debt was still owed and due.

75. Further, OCWEN inaccurately reported that the Plaintiff's "Date Major Delinquency 1st Reported" (hereinafter "DLA") was March 2014, when the Plaintiff filed Bankruptcy on 3/01/2010. The DLA date should have been no later than the Bankruptcy filing date. By reporting a DLA later than the Bankruptcy filing date OCWEN caused the DLA to remain on the Plaintiff's credit reported longer than allowed under the FCRA's obsolescence period codified at 15 U.S.C. § 1681c(a). OCWEN's "re-aging" of its debt is illegally causing the trade line to remain on the Plaintiff's credit report longer than legally permissible.

76. On or about December 15, 2015, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed OCWEN's reported information regarding its reported obligation by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by OCWEN.

77. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed, corrected or deleted.

78. Upon receiving the Equifax Dispute Letter, Equifax timely notified OCWEN of the dispute based on its mandated statutory duty pursuant to 15 U.SC. § 1681i.

79. Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

80. On or about January 19, 2016, Plaintiff received notification from Equifax through its "reinvestigation" (Equifax Report No. 5362055131) that OCWEN and Equifax received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6).

81. A reasonable investigation by these Defendants would have indicated that Plaintiff filed for Chapter 13 bankruptcy and made all required Chapter 13 plan payments, since Plaintiff obtained a discharge.

82. OCWEN and Equifax failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681s-2(b)(1)(A) and § 1681i and wrongly verified inaccurate information in connection with Plaintiff's credit reports.

83. OCWEN and Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B) and § 1681i.

84. OCWEN and Equifax re-reported the inaccurate derogatory information on Plaintiff's report.   Specifically, OCWEN and Equifax still inaccurately reported that there was an "actual payment amount" of $1,354, even though Plaintiff was discharged on 8/07/2015. OCWEN and Equifax also still inaccurately reported that there was a "scheduled payment amount" of $1,588, even though Plaintiff was discharged on 8/07/2015. Also, OCWEN and Equifax still inaccurately reported that the Plaintiff's DLA was March 2014, when the Plaintiff filed Bankruptcy on 3/01/2010.

85. OCWEN and Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) and § 1681i.

86. Due to OCWEN's and Equifax's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E) and § 1681i, thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and § 1681i.

87. Plaintiff's continued efforts to correct OCWEN's and Equifax's erroneous and negative reporting of the discharged debt by communicating Plaintiff's dispute with OCWEN and Equifax were fruitless.

88. OCWEN's and Equifax's continued inaccurate and negative reporting of the discharged debt in light of its knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

89. Also as a result of OCWEN's and Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses in challenging the Defendants' wrongful representations, damage to his creditworthiness, and emotional distress.

90. By inaccurately reporting account information relating to the discharged debt after notice and confirmation of its errors, OCWEN and Equifax failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E) and § 1681i.

## **OCWEN Misreported Credit Information**

## **RE: Account No. 9534**

91. In an Equifax credit report dated October 8, 2015, OCWEN inaccurately reported that there was a "scheduled payment amount" of $1,354, even though Plaintiff was discharged on 8/07/2015 and no payments were due on this

account creating the misleading and false impression that a debt was still owed and due.

92. Further, OCWEN inaccurately reported that the Plaintiff's "Date of Last Activity" (hereinafter "DLA") was February 2014, when the Plaintiff filed Bankruptcy on 3/01/2010. The DLA date should have been no later than the Bankruptcy filing date. By reporting a DLA later than the Bankruptcy filing date OCWEN caused the DLA to remain on the Plaintiff's credit reported longer than allowed under the FCRA's obsolescence period codified at 15 U.S.C. § 1681c(a). OCWEN's "re-aging" of its debt is illegally causing the trade line to remain on the Plaintiff's credit report longer than legally permissible.

93. On or about December 15, 2015, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed OCWEN's reported information regarding its reported obligation by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by OCWEN.

94. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed, corrected or deleted.

95. Upon receiving the Equifax Dispute Letter, Equifax timely notified OCWEN of the dispute based on its mandated statutory duty pursuant to 15 U.SC. § 1681i.

96. Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

97. On or about January 19, 2016, Plaintiff received notification from Equifax through its "reinvestigation" (Equifax Report No. 5362055131) that OCWEN and Equifax received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6).

98. A reasonable investigation by these Defendants would have indicated that Plaintiff filed for Chapter 13 bankruptcy and made all required Chapter 13 plan payments, since Plaintiff obtained a discharge.

99. OCWEN and Equifax failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681s-2(b)(1)(A) and § 1681i and wrongly verified inaccurate information in connection with Plaintiff's credit reports.

100. OCWEN and Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B) and § 1681i.

101. OCWEN and Equifax re-reported the inaccurate derogatory information on Plaintiff's report. Specifically, OCWEN and Equifax still

inaccurately reported that there was a "scheduled payment amount" of $1,588, even though Plaintiff was discharged on 8/07/2015. Also, OCWEN and Equifax now inaccurately reported that there was an "actual payment amount" of $1,354, even though Plaintiff was discharged on 8/07/2015 and no payments were made or due on this account creating the misleading and false impression that a debt was still owed and due. Further, OCWEN and Equifax now inaccurately reported that the Plaintiff's "Date Major Delinquency 1st Reported" (hereinafter "DLA") was March 2014, when the Plaintiff filed Bankruptcy on 3/01/2010.

102.    OCWEN and Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) and § 1681i.

103.    Due to OCWEN's and Equifax's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E) and § 1681i, thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and § 1681i.

104.    Plaintiff's continued efforts to correct OCWEN's and Equifax's erroneous and negative reporting of the discharged debt by communicating Plaintiff's dispute with OCWEN and Equifax were fruitless.

105.     OCWEN's and Equifax's continued inaccurate and negative reporting of the discharged debt in light of its knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

106.     Also as a result of OCWEN's and Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses in challenging the Defendants' wrongful representations, damage to his creditworthiness, and emotional distress.

107.     By inaccurately reporting account information relating to the discharged debt after notice and confirmation of its errors, OCWEN and Equifax failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E) and § 1681i.

## USB Misreported Credit Information

## RE: Account No. 9300

108.     In an Equifax credit report dated October 8, 2015, USB inaccurately reported that the Plaintiff still owed an outstanding balance of $8,072 even though USB's debt was discharged in the Bankruptcy. It was therefore inaccurate for USB to report a balance any greater than $0.

109.     USB also inaccurately reported that the Plaintiff was "past due" in the amount of $93.  Since Plaintiff discharged USB's debt, there was a $0 balance

due at the time USB reported the past due balance. Accordingly, reporting the past-due balance was inaccurate resulting from the Bankruptcy discharge.

110.    USB also inaccurately reported that there was an "actual payment amount" of $360, even though Plaintiff was discharged on 8/07/2015 and no payments were made or due on this account creating the misleading and false impression that a debt was still owed and due.

111.    Also, USB inaccurately reported that there was a "scheduled payment amount" of $360, even though Plaintiff was discharged on 8/07/2015 and no payments were due on this account creating the misleading and false impression that a debt was still owed and due.

112.    USB also reported that the Plaintiff was 30-59 days past due from April 2010 through May 2010.  This was inaccurate, since the Plaintiff performed all obligations owed to USB after filing Chapter 13 and obtained a discharge. Moreover, USB was paid according to the Chapter 13 Plan by the Chapter 13 Trustee and it was inaccurate for USB to report that the Plaintiff was "past due" after the Chapter 13 filing, since the Plaintiff fully performed all obligations owed to USB after filing the Chapter 13.

113.    Further, USB inaccurately reported that the Plaintiff's "Date Major Delinquency 1st Reported" (hereinafter "DLA") was July 2010, when the Plaintiff filed Bankruptcy on 3/01/2010.  The DLA date should have been no

later than the Bankruptcy filing date. By reporting a DLA later than the Bankruptcy filing date USB caused the DLA to remain on the Plaintiff's credit reported longer than allowed under the FCRA's obsolescence period codified at 15 U.S.C. § 1681c(a). USB's "re-aging" of its debt is illegally causing the trade line to remain on the Plaintiff's credit report longer than legally permissible.

114.    USB also reported an account "status" of "Charge Off". This was inaccurate, since the Plaintiff performed all obligations required under the Chapter 13 Plan and obtained a discharge. Moreover, USB was paid according to the Chapter 13 Plan by the Chapter 13 Trustee and it was inaccurate for USB to report that the Plaintiff's "status" was "Charge Off" after the Chapter 13 filing, since the Plaintiff fully performed all obligations owed to USB after filing the Chapter 13.

115.    On or about December 15, 2015, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed USB's reported information regarding its reported obligation by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by USB.

116.    Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed, corrected or deleted.

117.    Upon receiving the Equifax Dispute Letter, Equifax timely notified USB of the dispute based on its mandated statutory duty pursuant to 15 U.SC. § 1681i.

118.    Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

119.    On or about January 19, 2016, Plaintiff received notification from Equifax through its "reinvestigation" (Equifax Report No. 5362055131) that USB and Equifax received notice of Plaintiff's dispute pursuant to 15 U.SC. § 1681i(a)(6), and verified the account as "Updated".

120.    A reasonable investigation by these Defendants would have indicated that Plaintiff filed for Chapter 13 bankruptcy and made all required Chapter 13 plan payments, since Plaintiff obtained a discharge.

121.     USB and Equifax failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681s-2(b)(1)(A) and § 1681i and wrongly verified inaccurate information in connection with Plaintiff's credit reports. *Id.*

122.    USB and Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B) and § 1681i.

123.    USB and Equifax re-reported the inaccurate derogatory information on Plaintiff's report.  Specifically, USB and Equifax still inaccurately reported

that the Plaintiff still owed an outstanding balance of $8,072 even though USB's debt was discharged in the Bankruptcy. USB and Equifax also still inaccurately reported that the Plaintiff was "past due" in the amount of $93. Also, USB and Equifax still inaccurately reported that there was an "actual payment amount" of $360, even though Plaintiff was discharged on 8/07/2015. Further, USB and Equifax still inaccurately reported that there was a "scheduled payment amount" of $360, even though Plaintiff was discharged on 8/07/2015. USB and Equifax also still inaccurately reported that the Plaintiff's DLA was July 2010, when the Plaintiff filed Bankruptcy on 3/01/2010.

124.    USB and Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) and § 1681i.

125.    Due to USB's and Equifax's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E) and § 1681i, thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and § 1681i.

126.     Plaintiff's continued efforts to correct USB's and Equifax's erroneous and negative reporting of the discharged debt by communicating Plaintiff's dispute with USB and Equifax were fruitless.

127.     USB's and Equifax's continued inaccurate and negative reporting of the discharged debt in light of its knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

128.     Also as a result of USB's and Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses in challenging the Defendants' wrongful representations, damage to his creditworthiness, and emotional distress.

129.     By inaccurately reporting account information relating to the discharged debt after notice and confirmation of its errors, USB and Equifax failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E) and § 1681i.

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681 *ET SEQ*. (FCRA)

130.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

131.    The foregoing acts and omissions constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. §1681.

132.    As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

133.    As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendants.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681 ET SEQ. (FCRA)**

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

## TRIAL BY JURY

134.    Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: January 30, 2017

Respectfully submitted,

By  /s/ David H. Krieger, Esq.

David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiff
*LEANNE SANDRIANA*